## DAIGLE v. MADDOCKS.

(Third Division. Fairbanks. May 1, 1905.)

No. 241.

1. MINES AND MINERALS—LEASE—MORTGAGES.

The plaintiff and Kellum, his attorney, agreed that for the attorney's services in defeating the demand of Fleming to a half interest in a mining claim plaintiff would give Kellum the lower one-quarter of the claim. Kellum succeeded, but upon the appeal of Fleming a compromise was effected; Kellum agreeing to pay Fleming $4,000 and plaintiff $1,000, to secure the payment of which they gave a mortgage on the whole claim, subject to a prior contract made by plaintiff to sell his three-fourths for $50,000. Kellum leased his quarter to Maddocks, the defendant, and plaintiff brought this suit to prevent Maddocks working the ground until the mortgages were paid. *Held*, under the facts in the case, that Kellum was a mortgagor only, that his title was good, and the lease to defendant, Maddocks, valid; the relief prayed for by plaintiff denied.

2. CONTRACTS—CONSTRUCTION.

The whole of a transaction will be considered in construing the effect and meaning of a contract relating to a part only.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, §§ 746–748.]

About the month of April, 1904, the plaintiff was the owner of Placer Mining Claim No. 6 below Discovery, first tier, right limit, on Cleary creek, in the Fairbanks mining district. Litigation arose between him and one Fleming over the title to the claim, whereupon plaintiff employed J. C. Kellum as his attorney in that case, and the following agreement was entered into between them:

"Know all men by these presents, that I, Reuben Daigle, of Fairbanks, Alaska, do hereby agree to give, grant, and convey unto J. C. Kellum the lower divided one-quarter interest in bench claim on the right limit of Cleary creek, if the said Kellum shall quiet the title, or cause the title of said claim quieted so far as the claim of one Fleming is considered, or any one holding under him; said Fleming claiming a half interest in said claim for doing alleged work

thereon. But if the said Kellum shall fail to quiet said title to said claim, and the said Fleming shall get any interest in said claim for his said work, then the said Kellum is to get no part of the claim for his work thereon.

"And it is further agreed by the said Kellum that he will defend or cause the said claim to be defended as against any one relocating the said claim up to and including the 20th day of February, A. D. 1904, for and in consideration of the above interest in and to said claim.

"J. C. Kellum.

"Reuben B. Daigle."

In June, 1904, the case of Fleming v. Daigle was heard before this court, and a decree duly entered therein in favor of Daigle, quieting his title and against Fleming. On September 1, 1904, Kellum entered into the contract with Maddocks set out in the second paragraph of plaintiff's complaint, leasing the lower quarter of the claim to Maddocks, and providing that he should extract and mine the gold therefrom, paying to Kellum 33⅓ per cent. of the gross output. Daigle refused to permit Maddocks to work the ground, or to have quiet possession thereof, and brought this suit to restrain him from mining the gold.

On October 15, 1904, Daigle gave Crutcher, Gates, and Nelson an option to buy the upper three-fourths of the claim in case he won or settled the Fleming case for $50,000, and in case he did not win or settle, then the lower half for $33,333.33. He did settle the case within the time fixed by the option, and it therefore covers only the upper three-fourths, and not the Kellum interest.

About January 10, 1905, Daigle, Fleming, and Kellum settled the Daigle-Fleming suit by the payment to Fleming of the sum of $5,000. On that date two mortgages were made, pledging the whole of No. 6—the first one by Daigle for the sum of $1,875 in favor of the Fairbanks Banking Company, to secure his note for that amount due five months after date; the second, made by Daigle and Kellum to Fleming, due June

30th, for the sum of $3,500. At the time of making these mortgages, and as explanatory thereof, Daigle and Kellum entered into the following contract:

"This indenture, made and entered into this 11th day of January, A. D. 1905, by and between Reuben B. Daigle, of the town of Fairbanks, the party of the first part, and J. C. Kellum, of the same place, the party of the second part, witnesseth: That for and in consideration of the sum of one dollar ($1.00) lawful money of the United States in hand paid said party of the first part by said second party. the receipt whereof is hereby acknowledged, he, said first party, does hereby give and grant unto said second party the exclusive and sole option to purchase the hereinafter mentioned placer mining interest, to wit: The lower divided one quarter (¼) of Bench or Side Placer Mining Claim situate in the first tier on the right limit of Creek Placer Mining Claim Number Six (6) below Discovery Claim on Cleary Creek, in the Fairbanks mining and recording district, Alaska, together with the appurtenances thereunto belonging.

"The agreed consideration of said sale is four thousand, three hundred and seventy-five dollars ($4,375.00) lawful money of the United States of America, or clean gold dust, the product of said Cleary creek, to be rated at sixteen dollars ($16.00) per ounce Troy weight, to be paid to said first party, his heirs or assigns, as said second party may be directed by said first party; and, as a further consideration of said sale, the quieting of title to the said mining claim by said second party as attorney for said first party in a certain suit at law in the District Court of Alaska entitled Fleming v. Daigle, now on appeal from said District Court. Said party of the first part agrees to make, sign, acknowledge, and deliver a good and sufficient deed conveying said placer mining interest unto said party of the second part, or such person or persons as said second party may nominate, when said second party shall have paid said sum of four thousand three hundred and seventy-five dollars ($4,375.00) and quieted title to the said placer mining claim; provided, said sum shall be paid on or before the 30th day of June, 1905.

"In witness whereof the parties hereto have hereunto set their hands at Fairbanks, Alaska, this, the day and year first above written.

"Reuben B. Daigle.
"J. C. Kellum."

Daigle testified that the Fleming claim was settled for $5,000, of which he agreed to pay $1,000 and Kellum $4,000. The mortgage of $1,875 given by Daigle represents Daigle's

$1,000 and $500 of Kellum's amount, together with the bonus, or interest of $375, which Kellum was to pay. The mortgage from Kellum and Daigle to Fleming was to secure the additional $3,500 due from Kellum to Fleming. The so-called option of January 11th from Daigle to Kellum was an addition to, and an explanation of, their prior dealings. The mortgages of January 10th covered the whole of claim No. 6, but were subsequent and secondary liens to the Crutcher-Gates-Nelson contract to purchase the upper three-quarters for $50,-000, and the evidence establishes that the lower quarter was equally valuable.

Claypool, Stevens, Kellum & Cowles, for plaintiff.
Bion A. Dodge, for defendant.

WICKERSHAM, District Judge. This suit was begun on February 25, 1905, and its principal object is to prevent the defendant, Maddocks, from mining the lower quarter of No. 6, side claim, first tier, right limit, Cleary creek, under a lay agreement to do so with J. C. Kellum, and dated September 1, 1904. Plaintiff denies the right of Kellum to make the lay with Maddocks, and claims to be the owner of the ground, subject only to an option given by him to Kellum to purchase it upon the payment to him of the sum of $4,375 on or before June 30, 1905. Was the plaintiff the owner of the ground on February 25, 1905, when this suit was instituted?

In the consideration of a cause of this kind the court will look at the whole transaction, and will construe the effect of one part by the light of other parts. So, considering the transaction between Daigle and Kellum, it is my judgment that on January 11, 1905, upon the making of the mortgages and the settlement with Fleming, Kellum became the equitable owner of the lower quarter of the claim in question; their arrangement amounted in equity, and between themselves, to no more than a mortgage upon Kellum's property to secure (1)

Daigle's debt to the bank of $1,000, and (2) Kellum's debt to Fleming of $4,375.

To the suggestion that both these mortgages pledged the security of the whole of the mining claim, and not Kellum's quarter alone, it is answered: (1) That both mortgages are subsequent and subject to Daigle's prior contract to sell the upper three-fourths of the claim to Crutcher, Gates, and Nelson for $50,000; (2) that the Kellum quarter is ample security for both mortgages; and (3) that neither of the mortgagees is complaining of the insufficiency of his security.

Whatever may have been the legal status of the Kellum-Maddocks lay at the time it was made, or at any time prior to January 10, 1905, it is my judgment that on February 25, 1905, when this suit was instituted, Daigle had parted with the equitable title to the lower quarter of the claim to Kellum, and was not then entitled to the relief prayed for in his complaint in this action, that Kellum was, and is now, the equitable owner, and that the arrangement of the mortgages and option is only a mortgage upon Kellum's property to secure the payment of the sum of $5,000 to Fleming. The prayer of the complaint will be denied, and findings and judgment may be prepared accordingly.